IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TINA DIANE WINDHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 13-0025-WS-N |
| | ) | |
| CITY OF FAIRHOPE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on the Motion to Dismiss (doc. 7) filed by defendants City of Fairhope, Alabama, Trent Scott, Damian Rehorn and Bill Press (collectively, the "Fairhope Defendants") and on the Amended Motion to Dismiss or in the Alternative, Motion for More Definite Statement (doc. 12) filed by defendants Frank Kostyra and Anita McVay Kostyra (collectively, the "Kostyra Defendants"). Both Motions have been extensively briefed and are ripe for disposition.[1]

**I.     The Complaint.**

   *A.     Well-Pleaded Factual Allegations.*

Although plaintiff's Complaint (doc. 1) weighs in at a hefty 59 pages that obliterates any semblance of "notice pleading" under the Federal Rules of Civil Procedure, the underlying

---

[1]     Also pending is Plaintiff's Motion to Exceed Page Limitation (doc. 14). This Court previously indicated that "it is unnecessary for either response brief to exceed 30 pages." (Doc. 11, at 1.) The undersigned remains of that opinion after reviewing plaintiff's 34-page brief in response to the Fairhope Defendants' Motion to Dismiss. Although counsel could (and should) have edited his brief to comport with the 30-page cap, the Court in its discretion will accept the brief (doc. 15) in its current form. The Motion to Exceed Page Limitation is **granted**. That said, plaintiff's counsel is cautioned that, in the future, he may not use 1.5-line spacing or a tiny footnote font (as he has in this brief) to shrink artificially the number of pages in his briefs. Rather, his filings must adhere to the formatting specifications of Local Rule 5.1.

relevant facts pleaded therein are straightforward.[2]  For purposes of the pending Rule 12(b)(6) Motions, the Court accepts all well-pleaded facts in the Complaint as true, and confines its review of those facts to the four corners of plaintiff's pleading.[3]  As to the four-corners rule, the Court cannot and will not consider factual allegations that the parties attempt to inject into the court file via their briefs, where such facts are not set forth in the Complaint itself.  Also, even on Rule 12(b)(6) review, the Court is not bound to assume that legal conclusions or conclusory statements in the pleading are true or accurate.[4]

Plaintiff, Tina Diane Windham, is a resident of Fairhope, Alabama, who has lived at her present address since 2005.  (Doc. 1, ¶ 5.)  She has a long history of acrimonious relations with her neighbors, defendants Frank and Anita Kostyra; indeed, the Kostyras have filed numerous criminal complaints against her and have had a number of altercations / confrontations with Windham during the period from 2006 through 2012.  (*Id.*, ¶¶ 5, 13-20.)  One such incident animates Windham's 22-count, 246-paragraph Complaint leveled against six defendants.

---

[2]      Rather than the "short and plain statement" contemplated by Rule 8(a), Fed.R.Civ.P., plaintiff's Complaint devotes dozens of paragraphs to detailed description of evidence, quotations from transcripts, and discussion of case authorities, statutes and legal principles.  The Complaint reads almost like a summary judgment brief, not an initial pleading. The net result is that plaintiff's 246-paragraph pleading is mired in unnecessary and extraneous text that contravenes at least the spirit of the Federal Rules of Civil Procedure.

[3]      *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (on a motion to dismiss, federal court "accept[s] the facts alleged in the complaint as true, draw[s] all reasonable inferences in the plaintiff's favor, and limit[s] our review to the four corners of the complaint"); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint.") (citation and internal quotation marks omitted); *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) ("a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true when it considers a motion to dismiss a complaint under Rule 12(b)(6)").

[4]      *See, e.g., Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("if allegations are indeed more conclusory than factual, then the court does not have to assume their truth"); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth."); *see generally GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (pleading standard "necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim").

Shortly after 8:00 a.m. on January 12, 2012, Windham was in her front yard when a motorist in a white truck stopped at the edge of her property and summoned her to his vehicle, indicating that he had run out of gas.  (*Id.*, ¶ 21.)  Windham notified the driver that she kept a five-gallon canister of gasoline in her vehicle on the premises, and offered to share it with him.  (*Id.*, ¶ 22.)  The driver accepted.  So Windham retrieved the canister and assisted the driver in pouring gasoline into his tank.  (*Id.*, ¶ 23.)  Because the white truck was positioned along the edge of the curb, Windham did not interrupt or impair the flow of traffic during this process.  (*Id.*)  Traffic was not stopped at any time while Windham was helping the motorist; indeed, there was no traffic visible in either direction.  (*Id.*, ¶¶ 45, 53.)

Defendant Frank Kostyra observed these events, and called the Police Department of defendant City of Fairhope, falsely reporting that Windham was out in the road, blocking traffic, cursing, and disparaging the Kostyras.  (*Id.*, ¶ 24.)  By 8:50 a.m., two Fairhope police officers, defendants Trent Scott and Damian Rehorn, arrived on the scene in an official vehicle with "strobe" lights activated.  (*Id.*, ¶ 25.)  Although Windham had finished aiding the stranded motorist, and was preparing to return her empty gas canister to its storage location in her vehicle, she "immediately assumed that the officers were there to arrest her."  (*Id.*, ¶¶ 26-27.)[5]

Officers Scott and Rehorn exited their cruiser and asked Windham how she was doing, at which time she asked the stranded motorist to remain as a witness and stated that she did not wish to speak with the officers.  (*Id.*, ¶ 29.)  Officer Scott directed Windham to get off the road, even though she was not on the road.  (*Id.*)  He repeatedly told Windham to calm down.  In response, she informed Officer Scott that she did not have to calm down, emphatically adding, "I am on my own fucking property."  (*Id.*)  Less than two minutes after arriving on the scene, Officer Scott arrested Windham as she stood on her own property holding the empty gas canister.  (*Id.*)  Officer Scott did not specify a reason for arresting Windham.  (*Id.*, ¶ 34.)  At some point

---

[5]  On their face, these facts, as well as many others in the Complaint, make little sense.  By all appearances, the plaintiff's narrative seems at best to be selective and incomplete.  Why would Frank Kostyra call the police to report that Windham was screaming, cursing and blocking traffic in the roadway, if she was merely calmly assisting a stranded motorist who had run out of gas?  Why would Windham leap to conclusions that the police were there to arrest her, if she was merely being a Good Samaritan?  Something is missing from this narrative.  Nonetheless, on Rule 12(b)(6) review, this Court accepts those factual allegations wholly and uncritically, as it must.

during the arrest, Officer Rehorn "aggressively" patted down Windham by putting "both hands on one leg and then coming up and putting his hands on the inner thigh up towards the groin area, cupping it, and then coming down the other side." (*Id.*, ¶ 134.)

As pleaded in the Complaint, Windham "resisted by not helping … the officer to secure her other arm" as he handcuffed her. (Complaint, ¶ 35.) With the help of Officer Rehorn, Officer Scott then "wrestled" or "threw" Windham to the ground. (*Id.*, ¶¶ 35-36.) As the officers pressed her into the patrol vehicle, Windham "was still resisting," so the officers "dragged her out of the vehicle, tossed her on the ground, and caused her pants to come down exposing her private parts for public viewing." (*Id.*, ¶ 36.) Because of these "roughhouse tactics," Windham incurred severe headaches, soreness, bruises, a torn ligament, and "small bone fractures" in her knee. (*Id.*, ¶ 37.)

According to the Complaint, the officers' handling of Windham "aggravated a medical condition that was causing [her] to experience diarrhea." (*Id.*, ¶ 72.) Consequently, she asked Officers Scott and Rehorn repeatedly to allow her to use a bathroom. (*Id.*) They refused. (*Id.*) Windham became incontinent as she sat in the patrol car, resulting in "the uncontrolled spillage of fecal matter." (*Id.*, ¶ 73.) This incident was both "accidental" and "humiliating" to Windham. (*Id.*, ¶ 126.) Later that day, Officer Scott brought criminal mischief charges against Windham for defecating in his patrol vehicle, and executed a petition for involuntary commitment based, in part, on that same conduct. (*Id.*, ¶¶ 57-59.)

In the aftermath of these events, multiple defendants circulated written descriptions and accounts to the public. Late in the afternoon on January 12, 2012, Frank Kostyra transmitted an e-mail message reading, "Tina Arrested," in which he wrote that Windham was "destroying her front yard like a mad person," that "she stopped traffic," and that she was "yelling & screaming & pointing" at the Kostyras. (*Id.*, ¶ 64.) On January 16, 2012, defendant Bill Press, who was at that time the Fairhope Chief of Police, caused the Fairhope Police Department to "release to the media … the details of [Windham]'s ordeal," including her "most unflattering mug shot" and information about her defecating in the patrol vehicle. (*Id.*, ¶¶ 121-22.) The story became widely publicized on television and on the Internet. (*Id.*)

Windham maintains that, in order for her to make bail on the criminal charges initiated by Officer Scott, the District Court of Baldwin County "required [Windham] to forego living in her home or even returning to her home pending trial," and instructed her "to keep away from the

City of Fairhope unless accompanied by a responsible adult."  (*Id.*, ¶ 81.)  Thus, as framed in the Complaint, the bail conditions imposed by the Baldwin County court effectively required Windham to "abandon her home."  (*Id.*, ¶ 140.)

       **B.**      **Asserted Causes of Action.**

From these factual allegations, plaintiff derives some 22 causes of action divided amongst six defendants.  (The Complaint specifies that the law enforcement defendants – Chief Press, Officer Scott, and Officer Rehorn – are being sued solely in their individual capacities.)  Ten of these claims are couched as federal civil rights violations pursuant to 42 U.S.C. § 1983, while the other 12 are framed as violations of Alabama common law.

For purposes of a brief overview, these claims may be grouped by topic.  Plaintiff asserts false imprisonment / false arrest claims under both federal and state law, on the ground that the Fairhope police officers lacked probable cause to arrest and detain her on January 12, 2012 (Counts I, XII).  As to the "roughhouse" manner in which the arrest was carried out, Windham brings federal and state claims of excessive force, as well as a state-law claim of assault and battery (Counts II, XIII, XIV).  She asserts federal and state claims of malicious prosecution predicated on Officer Scott's filing of an involuntary commitment petition, as well as a separate state-law claim of malicious prosecution against Anita Kostyra for a criminal complaint she brought against Windham in October 2010 concerning an unrelated incident (Counts III, XV, XVI).  Windham also pleads no fewer than seven claims for invasion of privacy, including state and federal causes of action against Chief Press for releasing humiliating details of her arrest to the media (Counts IV, XIX), state and federal claims against Officers Scott and Rehorn for causing her pants to fall down while they were arresting her (Counts V, XXI), state and federal claims against Officer Rehorn for conducting a patdown search of Windham's person incident to her arrest (Counts VI, XXII), and a state claim against Frank Kostyra for circulating an e-mail message containing information about her arrest (Count XX).  The Complaint also contains two federal claims against the City of Fairhope (one for excessive bail, one for due process) concerning the Baldwin County District Court's condition of Windham's bail that she "abandon her home" (Counts VII, VIII).  Furthermore, Windham accuses the Kostyras, Officer Scott and the City of conspiring to violate her due process rights to be free from arrest and prosecution without probable cause (Count IX).  She brings state-law defamation claims against Chief Press and the City of Fairhope for releasing false information about her arrest to the media, and against

Frank Kostyra for circulating a false e-mail about her arrest (Counts XVII, XVIII).  Finally, plaintiff brings two redundant claims against the City of Fairhope setting forth the grounds why she believes municipal liability is appropriate for the aforementioned claims under federal and state law (Counts X, XI).[6]

Both the Fairhope Defendants and the Kostyra Defendants have now filed detailed Motions to Dismiss all claims Windham has brought against them.

## II.     The Fairhope Defendants' Motion to Dismiss.

In their Motion to Dismiss, the Fairhope Defendants do not identify a "magic bullet" that they contend entitles them to across-the-board dismissal of plaintiff's claims.  Rather, their analysis proceeds on a laborious claim-by-claim basis, using claim-specific theories, defenses and arguments.  This Order will hew to the same methodology.

### A.     *False Imprisonment / False Arrest (Count I).*

With respect to Count I, the Fairhope Defendants maintain that dismissal is warranted because this claim "rests upon a conclusory statement, without factual support, that she was arrested without probable cause."  (Doc. 8, at 7-8.)  Such a characterization is inaccurate.  Any reasonable reading of the Complaint reveals that plaintiff alleges considerable facts in support of her contention that she was arrested without probable cause.  Thus, movants' attempt to shoehorn this claim into the class of "unadorned, the-defendant-unlawfully-harmed me accusation[s]" proscribed by the *Twombly / Iqbal* precedents, *see Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted), cannot be reconciled with the contents of the pleading itself.

Next, Officers Scott and Rehorn request dismissal of Count I pursuant to the doctrine of qualified immunity.  "A motion to dismiss a complaint on qualified immunity grounds will be

---

[6]     In briefing the Fairhope Defendants' Rule 12(b)(6) Motion, plaintiff devotes almost two pages to a "Retaliation Free Speech Claim" and explaining why she believes it survives a qualified immunity challenge.  (Doc. 15, at 28-30.)  No such cause of action has been pleaded in the Complaint; therefore, the issue of whether Windham can allege a viable claim for "Retaliation Free Speech" is not properly considered at this time.  The Court will not entertain briefing on unasserted claims, nor will it issue advisory opinions about hypothetical causes of action.  This would be so in all cases, but particularly here, given that the Court is already allocating scarce resources to Rule 12(b)(6) review of the nearly two dozen causes of action Windham has interposed herein.

granted if the complaint fails to allege the violation of a clearly established constitutional right." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (citation and internal quotation marks omitted).  In the context of a Fourth Amendment false arrest claim, the qualified immunity inquiry turns on a standard of "arguable probable cause," not actual probable cause. *See, e.g., Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013) ("in cases involving arrests or warrantless searches or seizures, law enforcement officers are entitled to qualified immunity if they had even arguable probable cause"); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) ("If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.").  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (citation omitted).  Of course, probable cause exists when "facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted).

Setting aside the discretionary function element of the analysis, Officers Scott and Rehorn are not entitled to qualified immunity on Count I at the Rule 12(b) stage.  The facts as presented in the Complaint do not give rise to arguable probable cause for arrest.  According to the Complaint, Officers Scott and Rehorn were dispatched to Windham's home to investigate a telephonic tip from her neighbor, Frank Kostyra, that she was standing in the road, blocking traffic and behaving erratically.  (Doc. 1, ¶¶ 24, 41.)  The officers knew that Kostyra had a long history of bringing unsubstantiated criminal complaints against Windham.  (*Id.*, ¶ 17.)  They arrived on the scene to find Windham holding a gas can and standing on or near her property line (*i.e.*, not in the middle of the road) alongside another person and a white truck.  (*Id.*, ¶ 29.)  She was not in the middle of the road.  She was not blocking traffic.  She was not cursing and screaming.  (*Id.*)  When they greeted her by name, Windham told the officers she did not want to talk to them.  (*Id.*)  They instructed her to get out of the road, even though she was not in the road but was standing on her own property.  (*Id.*)  At that point, the officers knew that Windham was on her own property, was not blocking traffic, and was not otherwise engaged in conduct suggesting that she had committed, was committing, or was about to commit an offense.  There

are no facts in the Complaint alleging that the officers interviewed Kostyra, much less stating what he might have told them after his initial call to the dispatcher.

Yet, rather than leaving the scene after finding the initial report to be unfounded, the officers demanded that Windham hand over the gas canister.  (*Id.*)  Through both their own observations and the statements of the stranded motorist, the officers understood that she had been helping the driver of the white truck to pour gasoline in his vehicle in a random act of kindness to a stranger.  (*Id.*, ¶¶ 42-43.)  Thus, they knew she was not wielding the gas can for an illicit, threatening, destructive, or otherwise nefarious purpose.  Yet they ordered her to surrender it anyway.  When Windham refused to hand over the gas can, the officers instructed her to calm down, to which she responded that she did not have to calm down because she was "on my own fucking property."  (*Id.*, ¶ 29.)  The officers then arrested her.

In their Rule 12(b)(6) Motion, the Fairhope Defendants do not delineate any offense for which they believe they possessed colorable grounds to arrest Windham.  Instead, they vaguely reason that arguable probable cause of something was created when "[t]he plaintiff failed to comply with the police officer's command to relinquish control over gasoline, a dangerous substance."  (Doc. 8, at 10.)  But the well-pleaded facts in the Complaint show that the officers had no reasonable basis to believe that she had been using or was about to use the gasoline can to commit a crime, or that the gas can posed any threat to anyone.  Accordingly, they lacked any arguable ground for seizing her personal property.  By demanding that she turn over the gas canister, the officers sought to effect an unreasonable seizure of Windham's property, in violation of the Fourth Amendment.  The law is clearly established that "one cannot be punished for failing to obey the command of a [police] officer if that command is itself violative of the Constitution."  *Wright v. State of Georgia*, 373 U.S. 284, 291-92, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963).[7]  The Fairhope Defendants identify no legal principle that would have allowed Officers

---

[7]      *See generally Brooks v. Rothe*, 577 F.3d 701, 711 (6th Cir. 2009) (Moore, J., dissent) ("a reasonable officer should have known that it was not proper to arrest someone for non-violently refusing to comply with an unlawful order"); *Hodge v. Lynd*, 88 F. Supp.2d 1234, 1238 (D.N.M. 2000) ("If Lynd's order excluding Jerry from the fairgrounds was unconstitutional, Jerry could not validly be arrested for non-violently disobeying that order."); *United States v. Olavarria*, 2011 WL 1529190, *7 (S.D.N.Y. Apr. 20, 2011) ("Where the police are engaged in an illegal arrest, other unlawful seizure, or an unlawful search, no charge for obstruction of governmental administration will lie."); *Mann v. Darden*, 630 F. Supp.2d 1305, (Continued)

Scott and Rehorn to issue a lawful command under the Fourth Amendment to seize Windham's gas canister under these circumstances, nor do they identify any legal basis that would have conferred arguable probable cause to arrest Windham for failing to comply with this facially unconstitutional directive.[8]  The Court will not endeavor to fill in the blanks on movants' behalf by guessing what Alabama law or ordinance movants contend they had probable cause to believe Windham was violating or had violated, much less how her failure to comply with their command created arguable probable cause for them to seize her person.

In their reply brief, the Fairhope Defendants endeavor to shore up the arguable probable cause for the gas-can directive by asserting that "[t]he plaintiff was hostile to the Officers on the scene," which somehow justified their confiscation of a gas can that might (or might not) contain "a dangerous substance."  (Doc. 17, at 6.)  However, the well-pleaded allegations of the Complaint do not show that Windham had exhibited hostility to the officers or to anyone else as of the moment Officer Scott commanded her to turn over her personal property.  The Complaint does not allege that Windham used profanity prior to that directive, nor does it allege that she was belligerent or loud, or that the officers had even told her to calm down, before that directive was given.  By contrast, the Complaint does allege that the officers had been apprised of the peaceful, nonthreatening purpose for which Windham had been using the gas can moments before the officers arrived.  Again, a Rule 12(b)(6) Motion must be evaluated based on the well-pleaded factual allegations of the Complaint, not on unpleaded facts that defendants say existed.

---

1317 (M.D. Ala. 2009) ("Darden does not point to any crime arguably committed by Mann in ignoring those specific commands for which he would have had arguable probable cause to seize her in any way.").

[8]      At most, movants rely on *Ainsworth v. Norris*, 2012 WL 1109041, *2 (11th Cir. Apr. 4, 2012), for the notion that refusal to comply with an officer's commands can give rise to probable cause to arrest.  Certainly, that is so.  But *Ainsworth* is distinguishable.  In that case, there was no indication that the officer's requests that the plaintiff exit his vehicle were unlawful or improper.  Here, by contrast, movants have not explained why Officer Scott's demand that Windham relinquish personal property was supported by even arguable probable cause.  If that command lacked arguable probable cause (and the Complaint recites no facts suggesting otherwise), then arresting her for failure to comply with that command likewise was not supported by arguable probable cause.

On these facts, the officers lacked arguable probable cause to believe that Windham had used or was about to use the gasoline can to commit a crime.[9] Her refusal to submit voluntarily to seizure of her personal property in those circumstances amounted to invocation of her Fourth Amendment right to be free from unreasonable seizures. Such disobedience did not create arguable probable cause for Officer Scott to arrest her. Although defendants attempt to divine arguable probable cause from events that occurred after Windham was told she was under arrest and after the officers attempted to subdue her, those events cannot confer arguable probable cause that was lacking at the inception of the arrest. *See generally Exford v. City of Montgomery*, 887 F. Supp.2d 1210, 1224 n.7 (M.D. Ala. 2012) ("Resisting arrest quite obviously could not serve as probable cause for initiating Exford's arrest – that would put the cart before the horse."). For all of these reasons, the Fairhope Defendants' Motion to Dismiss is **denied** as to Count I.

### B.      Excessive Force (Count II).

The Fairhope Defendants also contend that qualified immunity insulates them from liability for the federal excessive force claim asserted in Count II. "[D]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (citation omitted). In the arrest context, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). "In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances

---

[9]      Remarkably, the Fairhope Defendants also take the position in their reply brief that Officers Scott and Rehorn were free to seize Windham's property at any time for any reason. In response to plaintiff's argument that the officers' unreasonable demand for the gas can violated the Fourth Amendment, defendants write, "The plaintiff misapprehends the scope of police authority," and suggest that Alabama law grants police officers expansive powers that would permit this kind of encroachment. (Doc. 17, at 7.) The Court declines an invitation to invalidate the Fourth Amendment's protection from unreasonable searches and seizures in Alabama, regardless of the accuracy (or lack thereof) of defendants' citations to state-law authorities.

and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Morton*, 707 F.3d at 1281 (citation omitted). "[W]e evaluate whether force was necessary by examining: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) (citations and internal quotation marks omitted).

The well-pleaded facts alleged in the Complaint are that Officers Scott and Rehorn were confronted with Windham, a "frail" 51-year old female weighing 120 pounds; that they placed her under arrest when she refused to surrender a gas can they knew she had been using to help a stranded motorist; and that Windham had cursed at the officers when they told her to calm down. When Officer Scott attempted to place handcuffs on Windham, she did "not help[] him … to secure her other arm." (Doc. 1, ¶ 35.) In response, the "beefy" Officers Scott and Rehorn "both threw her roughly to the ground," then "press[ed] her into the patrol vehicle," "dragged her out of the vehicle, [and] tossed her on the ground." (*Id.*, ¶ 36.) These actions caused substantial physical injury to Windham, in the form of bone fractures, a torn ligament, bruises/contusions, and neck soreness. (*Id.*, ¶ 37.)

On this limited Rule 12(b)(6) factual showing, the Court cannot find that the officers' conduct was objectively reasonable in light of the facts known to them. The officers were not arresting Windham for a serious offense, and indeed had no probable cause to believe she had committed any crime, much less a crime involving physical harm or threats. They had no indication that Windham (who was slight of stature) was violent or that she posed a threat to anyone's safety. To be sure, the officers had reason to believe that Windham was angry (*i.e.*, when she snapped and cursed at them that she was on her own property), and they knew she was not cooperating in attempts to handcuff her.[10] But the Complaint shows that the officers grossly

---

[10]     A critical detail is the level, type and manner of resistance offered by Windham. Those facts are largely missing from the Complaint. This Court can neither assume that her resistance took an extreme form nor otherwise fill in the factual gaps in defendants' favor. What we are left with for Rule 12(b)(6) review is that her resistance involved merely "not helping … the officer to secure her other arm." (Doc. 1, ¶ 35.) That fact, considered with the other facts in the Complaint, would not lead any reasonable officer to conclude that it would be an acceptable use of force for two burly police officers to throw her to the ground twice and to drag her from (Continued)

overreacted to these circumstances by throwing her to the ground twice and physically dragging her out of the patrol vehicle, all with such force that Windham fractured bones, tore a ligament, and incurred bruises and contusions.  Accepting this predicate as the universe of available facts (as the Court must on Rule 12(b)(6) review), Officers Scott and Rehorn engaged in conduct that "was so far beyond the hazy border between excessive and acceptable force that [they] had to know [they were] violating the Constitution even without caselaw on point."  *Morton*, 707 F.3d at 1282 (citations omitted).

Accordingly, the arresting officers are not entitled to qualified immunity at the Rule 12(b)(6) stage with respect to the excessive force claim found at Count II of the Complaint.[11]

###### C.    *Malicious Prosecution (Count III).*

Count III of the Complaint is a § 1983 claim of malicious prosecution directed at Officer Scott and the City, alleging violation of the Fourth Amendment in connection with involuntary commitment proceedings he commenced against her.  With respect to that claim, the Fairhope Defendants' sole argument in their Rule 12(b)(6) Motion is that a constitutional claim for malicious prosecution requires proof of absence of probable cause.  That is a correct statement of law.  *See, e.g., Grider*, 618 F.3d at 1256 ("the existence of probable cause defeats a § 1983 malicious prosecution claim").[12]

---

the police cruiser.  Perhaps other facts will negate that conclusion, but those facts are not in the pleading and therefore may not be considered at this time.

[11]    In so concluding, the undersigned does not adopt Windham's argument that Count II is viable, as a matter of law, because the officers lacked probable cause to arrest her.  The Complaint as framed shows that the officers indeed lacked probable cause for such an arrest.  And the Eleventh Circuit has explained that "if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest."  *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).  Federal law is clear, however, that "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim."  *Id.*  Thus, it is the manner in which the officers conducted the arrest (and the force they used incident to arrest) that must drive the § 1983 excessive force claim set forth in Count II, not merely the absence of probable cause for performing an arrest in the first place.

[12]    More broadly, the Eleventh Circuit teaches that "[t]o establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort (Continued)

In lieu of any new arguments relating to the presence of probable cause for the initiation of commitment proceedings, however, the Fairhope Defendants simply rest on arguments already made with respect to the arrest in Count I.  In addressing that claim *supra*, the Court found that the pleadings do not support a determination that Officer Scott had even arguable probable cause to arrest Windham.  Without arguable probable cause to arrest, Officer Scott could not have had arguable probable cause to prosecute.  *See id.* at 1257 n.25 (applying "the same 'arguable probable cause' standard in the qualified immunity context for § 1983 claims for both false arrest and malicious prosecution").  Thus, the Rule 12(b)(6) Motion seeks dismissal of Count III solely on the ground of arguable probable cause, but the Complaint as pleaded does not show that arguable probable cause existed.  Besides, defendants' argument does not even mention the probable cause inquiry as it relates to the commitment proceedings on which Count III is expressly based.  Accordingly, the Motion is **denied** as to the § 1983 malicious prosecution claim.

### D.    *Invasion of Privacy (Counts IV, V and VI).*

In Counts IV, V and VI of the Complaint, Windham brings § 1983 invasion of privacy claims against the Fairhope Defendants based on Chief Press's publication of details of Windham's arrest and her defecation in the police cruiser (Count IV), Officers Scott and Rehorn's act of causing Windham's pants to fall below her knees during the struggle incident to her arrest (Count V), and Officer Rehorn's patdown search of Windham (Count VI).

Movants' only arguments for dismissal of these counts are that there is no reasonable expectation of privacy for events transpiring in the back of a police car and that Windham's partial disrobing during her arrest was not a wrongful intrusion.  (Doc. 8, at 18-19.)  Movants do not articulate any dismissal arguments specific to Count VI; therefore, the Court will not address that claim at this time.[13]

---

of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures."  *Id.*  Lack of probable cause is an element of each prong.

[13]      In their reply brief, the Fairhope Defendants assert for the first time that invasion of privacy is not actionable under federal law.  (*See* doc. 17, at 10-11.)  This contention fails for at least two reasons.  First, federal courts generally do not consider new, previously available arguments unveiled in reply briefs.  *See, e.g., Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp.2d 1296, 1314 n.26 (S.D. Ala. 2012) ("This is a new, previously available argument (Continued)

With regard to Count IV, plaintiff's stated theory is that Chief Press's publication of details that she had lost control of her bowels in the police car invaded her privacy because "the plaintiff had a reasonable expectation that this ordeal would remain private." (Doc. 1, ¶ 126.) Federal law is to the contrary. Indeed, defendants correctly point out that Windham enjoyed no Fourth Amendment expectation of privacy in her actions, statements, deeds or conduct (whether accidental or intentional) in the back seat of the police cruiser. *See, e.g., United States v. McKinnon*, 985 F.2d 525, 528 (11th Cir. 1993) ("we hold that McKinnon did not have a reasonable or justifiable expectation of privacy for conversations he held while seated in the back seat area of a police car").[14] Plaintiff's sole rejoinder to this argument is that Chief Press's conduct may be actionable under Alabama invasion of privacy principles. (*See* doc. 15, at 25.) That may be all well and good, but Count IV is couched as a federal invasion of privacy claim,

---

which a movant cannot properly raise for the first time in a reply brief."); *Apex/FCC, LLC v. FlexiCrew Staffing, Inc.*, 2012 WL 5398803, *4 (S.D. Ala. Nov. 1, 2012) ("as a new argument raised for the first time in a reply brief, it is improper"). Second, the Fairhope Defendants do not cite a single authority for this proposition, and there appears to be ample contrary Eleventh Circuit case law. *See, e.g., United States v. Gecas*, 120 F.3d 1419, 1477 (11th Cir. 1997) (referencing "the freedom from unconscionable invasions of privacy guaranteed by the Fourth Amendment") (brackets and citation omitted); *Brock v. Emerson Elec. Co., Electronic & Space Div.*, 834 F.2d 994, 996 (11th Cir. 1987) ("the primary purpose of the Fourth Amendment is to prevent arbitrary invasions of privacy"); *United States v. Hill*, 2009 WL 2178046, *1 (11th Cir. July 23, 2009) ("The Fourth Amendment protects the citizen against invasion of privacy.") (citation and internal quotation marks omitted); *Luster v. Ledbetter*, 647 F. Supp.2d 1303, 1310 (M.D. Ala. 2009) ("It is clear that a reasonable officer would have the common sense to know that such unnecessary, deeply humiliating invasion of privacy is unreasonable under the Fourth Amendment."). The Court will not guess at the legal basis of the Fairhope Defendants' new argument.

[14]    *See also United States v. Rodriguez*, 1993 WL 241764, *1 (4th Cir. July 6, 1993) ("Society does not recognize an expectation of privacy in the back seat of a police car."); *United States v. Sutmiller*, 2011 WL 2636542, *4 (W.D. Okla. July 6, 2011) ("a person has no expectation of privacy in the back of a police car"); *United States v. Reese*, 2010 WL 2606280, *4 (N.D. Ohio June 25, 2010) ("Courts have consistently held that persons placed in the back seat of a police car, whether pre-arrest or post-arrest, have no reasonable expectation of privacy"); *United States v. Mees*, 2009 WL 1657420, *8 (E.D. Mo. June 10, 2009) ("there is no reasonable expectation of privacy inside a police car"); *United States v. Leal*, 2003 WL 21665126, *12 (M.D. Fla. Mar. 28, 2003) ("It is well-established that there is no reasonable expectation of privacy in the back of a police car.").

not an Alabama claim. If plaintiff cannot show that she had a Fourth Amendment reasonable expectation of privacy in the events that occurred in the back of the police car, then her federal invasion of privacy claim must fail. She has not even attempted to argue the point under federal law;[15] therefore, the Fairhope Defendants' Motion to Dismiss will be **granted** as to Count IV for want of a federally cognizable reasonable expectation of privacy.

In response to the Fairhope Defendants' contention that Count V is not a wrongful intrusion into Windham's privacy because her pants fell down while the officers were attempting to gain control of her during the arrest, plaintiff again points exclusively to Alabama law. (*See* doc. 15, at 25.) Plaintiff is answering the wrong question. The issue in Count V is whether Officers Scott and Rehorn's conduct in the course of the arrest is actionable as a § 1983 invasion of privacy, not whether it is actionable as an Alabama invasion of privacy. Plaintiff has not even attempted to make the requisite legal showing as to Count V; therefore, that claim will likewise be **dismissed** because plaintiff has not attempted to explain how the officers wrongfully infringed on privacy interests protected by the Fourth Amendment.[16]

---

[15]    At best, plaintiff insists that under *Summers v. Bailey*, 55 F.3d 1564 (11th Cir. 1995), the contours of a § 1983 invasion of privacy claim are defined by state law. (*See* doc. 15, at 26.) Her reliance on *Summers* is misplaced. In that case, the plaintiff did not bring a federal invasion of privacy claim at all, but instead asserted Georgia tort claims of intrusion and false light invasion of privacy. *See Summers*, 55 F.3d at 1566. Nowhere did the *Summers* court purport to prescribe principles or guidelines for federal invasion of privacy causes of action, much less to declare federal constitutional claims to be interchangeable with state tort claims in the invasion of privacy field.

[16]    In this regard, the facts alleged by Windham are readily distinguishable from those in *Luster v. Ledbetter*, 647 F. Supp.2d 1303 (M.D. Ala. 2009), in which law enforcement agents brought an unclothed, restrained plaintiff out of her home during a late-night search of the premises. The officers "had not permitted her to dress before restraining her," such that she "was nude and exposed to a dozen or so other people on the scene" for a prolonged period of time. *Id.* at 1306. In that circumstance, the *Luster* court opined that the plaintiff had stated a viable claim against the officers for violating her Fourth Amendment rights by doing "unnecessary violence to a person's dignity or privacy." *Id.* at 1309. By contrast, Windham's account is that her trousers momentarily slipped down to her knees while she scuffled with Officers Scott and Rehorn during the arrest. She does not suggest that they forcibly removed her pants, that they refused to allow her to dress, or that this event was anything more than a momentary, fleeting, inadvertent indignity. Under the reasoning of *Luster* and *Los Angeles County, California v. Rettele*, 550 U.S. 609, 615, 127 S.Ct. 1989, 167 L.Ed.2d 974 (2007), in which the Supreme Court found no Fourth Amendment violation where the plaintiff was forced to stand nude in her bedroom for no more than two minutes while law enforcement officers secured the area, (Continued)

E.    *Excessive Bail (Counts VII and VIII).*

The Fairhope Defendants next take aim at Counts VII and VIII, in which Windham brings Eighth and Fourteenth Amendment challenges against the City of Fairhope relating to the conditions of her bail.  In particular, those counts allege that the Baldwin County District Court improperly established as a condition of Windham's bail that she "abandon her home" and "prohibited plaintiff from returning to the city unless escorted by an adult."  (Doc. 1, ¶¶ 140, 145.)  Plaintiff requests a declaration that such conditions of bail are unconstitutional and an injunction barring the City of Fairhope from enforcing those provisions.  (*Id.*, ¶¶ 144, 149.)  The City now moves for dismissal of Counts VII and VIII.[17]

With respect to these claims, the City's Motion rests wholly on application of *Rooker-Feldman* principles.  This doctrine provides that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009) (citation omitted).  The boundaries of the *Rooker-Feldman* doctrine are clearly delineated as reaching only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 1274 (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).  The City argues that Counts VII and VIII fit neatly within the parameters of *Rooker-Feldman* because Windham would have this Court review the state court's determination of appropriate conditions of her state-court bail.

In response, Windham raises several arguments, the most immediate of which is that *Rooker-Feldman* does not apply because "there has been no final judgment in state court."  (Doc.

---

Windham has no viable constitutional claim in Count V.  Certainly, she has identified no authority that would recognize a Fourth Amendment violation in these circumstances, and the Supreme Court's *Rettele* decision appears fatal to any such claim.

[17]    In her opposition brief, plaintiff incorrectly states that "Defendants' [*sic*] raise no challenge to this Count [meaning Count VIII], therefore, it is not addressed elsewhere in this brief."  (Doc. 15, at 2 n.2.)  On the face of the Fairhope Defendants' Rule 12(b) Motion and supporting brief, they seek dismissal of Counts VII and VIII.  (*See* doc. 8, at 19-21.)  The Court therefore rejects Windham's suggestion that no Rule 12(b)(6) Motion has been lodged with respect to Count VIII.

15, at 27.)  The Eleventh Circuit has unequivocally established that the *Rooker-Feldman* doctrine applies only where "the prior state court ruling was a final or conclusive judgment on the merits."  *Nicholson*, 558 F.3d at 1272; *see also David Vincent, Inc. v. Broward County, Fla.*, 200 F.3d 1325, 1332 (11th Cir. 2000) (declining to apply *Rooker-Feldman* where plaintiffs effectively challenged Florida courts' denial of temporary injunction, but such denial was "not a final or conclusive judgment on the merits"); *Jones v. Commonwealth Land Title Ins. Co.*, 2012 WL 205844, *2 (11th Cir. Jan. 25, 2012) ("there is nothing in the record that indicates that there was a final or conclusive judgment on the merits in Jones's state court case .…  Therefore, the *Rooker-Feldman* doctrine does not preclude federal jurisdiction over this case.").  The City offers no rejoinder to this argument, and offers neither reasoning nor well-pleaded facts in the Complaint supporting a determination that either (i) there has been a final judgment on the merits, or (ii) that requirement is no longer good law.  In the absence of such a showing by the City, its Motion to Dismiss is due to be, and hereby is, **denied** as to Counts VII and VIII because movant has not met its burden of showing that the *Rooker-Feldman* doctrine precludes those claims.

> ### F.   *Conspiracy to Deny Due Process (Count IX).*

In Count IX of the Complaint, plaintiff alleges that Officer Scott conspired with the Kostyras "to deprive Plaintiff of her due process rights to be free from" arrest and prosecution without probable cause, all in violation of 42 U.S.C. § 1985(3).  (Doc. 1, ¶ 150.)  Plaintiff further alleges that defendants perceive her to have a mental disability and that the object of their conspiracy was "to deny a perceived disabled person the equal protection of the laws."  (*Id.*, ¶ 151.)  This last allegation appears necessary to align Windham's Count IX with the legal elements of a § 1985(e) claim, which are as follows: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1149 (11th Cir. 2009) (citation omitted).

The Fairhope Defendants' only stated ground for seeking dismissal of Count IX is that "[t]he plaintiff wholly fails to plead any facts regarding the nature of the alleged conspiracy." (Doc. 8, at 21.)  It is true, of course, that "[i]n conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint

that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).[18]  The trouble with this argument is that Windham's pleading does not merely allege in conclusory terms that a conspiracy existed, with no supporting facts.  To the contrary, the Complaint pleads the following facts, among others, that are probative of the existence of a conspiracy: (i) in or around late 2011, Kostyra professed to have reached an understanding with Fairhope police that Windham would be arrested if she went into the street and blocked traffic (doc. 1, ¶ 20); (ii) shortly before January 12, 2012, Kostyra went to the Fairhope police to "warn them" that Windham "would snap" and that the Kostyras "would be a target of her fury" (*id.*, ¶ 64); (iii) Kostyra lied to the Fairhope police on January 12 by reporting that Windham was in the street blocking traffic, which she was not, in furtherance of his express understanding that this report would prompt the Fairhope police to come and arrest Windham (*id.*, ¶ 24); (iv) Fairhope police officers promptly came and arrested Windham based on that false report, even though they never saw her block traffic; (v) Officer Scott initiated commitment proceedings against Windham that very day; and (vi) both Kostyra and Officer Scott perceived Windham as being mentally disabled because both had initiated involuntary commitment proceedings against her (*id.*, ¶ 151).  Considering these and other factual allegations in the Complaint, the Court finds that Count IX is not so vague or conclusory that defendants lack notice of the nature of the alleged conspiracy.  The Fairhope Defendants' Motion to Dismiss is **denied** as to Count IX.

### G.  *Municipal Liability (Count X).*

In Count X of the Complaint, Windham purports to assert a § 1983 municipal liability claim against the City of Fairhope.  As to this cause of action, the City moves for dismissal on the following two grounds: (i) Windham has identified no policy and no deliberate indifference; and (ii) an inadequate training claim is not cognizable as a matter of law.

---

[18]     *See also Little v. City of New York*, 487 F. Supp.2d 426, 441 (S.D.N.Y. 2007) ("Complaints that contain only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed") (citations and internal marks omitted); *Local 749, AFCSME, Council 4, AFL-CIO v. Ment*, 945 F. Supp. 30, 35 (D. Conn. 1996) ("Since plaintiff's allegations of conspiracy are vague and conclusory, we grant defendants' motion to dismiss as to this claim …."); *Sharp v. Rainey*, 910 F. Supp. 394, 395 (E.D. Tenn. 1996) ("In order to demonstrate the existence of a conspiracy, a plaintiff must show more than vague and conclusory allegations unsupported by material facts.") (citation and internal quotation marks omitted).

Initially, the City takes the position that the Complaint does not identify any policy of the City that led to a violation of Windham's constitutional rights, much less offer allegations that such policy as enacted with deliberate indifference.  With regard to the nature of the policy, a plain reading of Count X shows that it is anchored in allegations that the City failed adequately to train its police officers concerning unlawful arrests and excessive force.  (Doc. 1, ¶¶ 155-64.) The Eleventh Circuit has explained that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. … To establish a municipality's 'deliberate indifference,' a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area."  *American Federation of Labor and Congress of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1188-89 (11th Cir. 2011) (citations omitted); *see also Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1145 (11th Cir. 2007) ("In order to sustain her claim that her injury was the result of improper training, Skop was required to bring forth some evidence of a pattern of improper training to sustain her claim, and she must show that Atlanta was aware of the deficiencies in the program.") (citations and internal marks omitted).  The Complaint pleads facts that support a reasonable inference of (i) a history of misconduct by Fairhope police officers; (ii) a history of unlawful arrest and excessive force by Officer Scott himself; and (iii) knowledge of this history by the City.  (Doc. 1, ¶¶ 7, 66, 157-60.) The City does not explain in its Rule 12(b)(6) Motion why it believes these facially-sufficient allegations to be inadequate, instead falling back on conclusory (and inaccurate) rhetoric that Windham "fails to identify … that any alleged policy was instituted with deliberate indifference."  (Doc. 8, at 11-12.)  The "deliberate indifference" element appears to be adequately alleged via specific supporting facts in the Complaint, and movants do not explain why they contend otherwise.

As noted, the gravamen of Count X, as plaintiff has pleaded it, is that the City is liable under § 1983 for inadequate training of Officers Scott and Rehorn in probable cause for arrests and the appropriate use of force incident to arrest.  The City argues in its Rule 12(b)(6) Motion that this portion of Count X should be dismissed because Alabama law does not recognize a cause of action against a municipality for negligent training.  (Doc. 8, at 12.)  Be that as it may, Count X is <u>not</u> a state-law claim for negligent training.  Indeed, nowhere in the Complaint is any

state-law claim or cause of action asserted against the City for negligent training.[19]  The claim presented in Count X is a § 1983 cause of action against a municipality for inadequate training. That theory of liability has routinely been found to be actionable in this Circuit.  *See, e.g., City of Miami*, 637 F.3d at 1188 ("A municipality can also be held liable under § 1983 when its employees cause a constitutional injury as a result of the municipality's policy- or custom-based failure to adequately train or supervise its employees.").

For all of these reasons, the City's Motion to Dismiss will be **denied** as to Count X, which appears adequately to allege a claim of municipal liability against the City of Fairhope on a failure to train theory.

### H.      State-Law Claims (Counts XI – XV, XVII, XIX, XXI, XXII.)

#### 1.      Immunity.

As a threshold matter, the Fairhope Defendants contend that they are entitled to immunity on all of Windham's state-law claims pursuant to Alabama Code § 13A-3-22 and state-agent immunity pursuant to Alabama Code § 6-5-338.

Initially, the Fairhope Defendants assert that they are entitled to Rule 12(b)(6) relief pursuant to an Alabama statute that provides as follows:  "Unless inconsistent with … some other provision of law, ***conduct which would otherwise constitute an offense is justifiable and not criminal*** when it is required or authorized by law … or is performed by a public servant in the reasonable exercise of his official powers, duties or functions."  Ala. Code § 13A-3-22 (emphasis added).  Movants' reliance on this statute is unavailing at this stage because, on its face, § 13A-3-22 merely provides an "execution of public duty" defense to criminal liability. Nothing in the text of the statute states or suggests – and defendants cite no Alabama court decisions holding – that § 13A-3-22 creates a special immunity from civil suits, or a privilege to commit torts.  This Court will not expansively apply § 13A-3-22 to a context beyond the parameters of its plain language on defendants' unvarnished, unsupported say-so.  Moreover, by

---

[19]      Just as plaintiff cannot constructively argue the merits of claims not appearing in the Complaint, neither can defendants.  Debating whether Windham could or could not successfully prosecute some other claim she has not pursued to date against any defendant is an irrelevant and unhelpful exercise.  The Court will focus its analysis on the 22 causes of action Windham has asserted in the Complaint, rather than indulging speculation about the legal and factual viability of claims she has not.

its terms, this statute creates a "justification" defense only for acts performed by a public servant "in the reasonable exercise of his official powers, duties or functions." *Id.*  The point of Windham's Complaint is that the officers' actions were entirely unreasonable.  Indeed, the well-pleaded factual allegations of the Complaint, accepted as true, establish that Officers Scott and Rehorn were not reasonably exercising their official powers, duties and functions when they arrested Windham for no plausible reason, applied unnecessary and excessive force to injure her, and so on, all in derogation of her federal constitutional rights.  In short, § 13A-3-22 on its face has no application here, and movants have advanced no meaningful arguments supporting a different result.

Next, the Fairhope Defendants invoke the doctrine of state-agent immunity.  Under Alabama law, "a State official or agent may be entitled to State-agent immunity pursuant to *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000), as to actions asserted against him or her in his or her individual capacity." *Ex parte Moulton*, --- So.3d ----, 2013 WL 285726, *19 (Ala. Jan. 25, 2013).  Alabama law recognizes, however, that state-agent immunity is unavailable where "the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Kennedy*, 992 So.2d 1276, 1282 (Ala. 2008) (citation omitted).[20]  Courts applying these principles have found that police officers lose their state-agent immunity when they perform an arrest without arguable probable cause.  *See Ruffino v. City of Hoover*, 891 F. Supp.2d 1247, 1278 (N.D. Ala. 2012) ("The Alabama Supreme Court resolved the question by determining that the absence of arguable probable cause defeats the officer's claim to immunity under Ala.Code § 6-5-338."); *Mann v. Darden*, 630 F. Supp.2d 1305, 1315 (M.D. Ala. 2009) ("if a reasonable officer could not have believed that he had probable cause to arrest, then there is no discretionary-function immunity").  The unreasonable and excessive use of force by officers in enforcing the peace has likewise been held to be beyond the pale of state-agent immunity.  *See Mann*, 630 F. Supp.2d at 1318-20.  The Eleventh Circuit has found that a law enforcement

---

[20]     Although the Fairhope Defendants also frame their defense in terms of peace-officer immunity as set forth in Alabama Code § 6-5-338(a), the Alabama Supreme Court has explained that *Cranman* "now governs the determination of whether a police officer is entitled to immunity under § 6-5-338(a), Ala.Code 1975." *Downing v. City of Dothan*, 59 So.3d 16, 19 (Ala. 2010).  As such, the Court will not embark on a distinct analysis of § 6-5-338(a) immunity, separate and apart from *Cranman* state-agent immunity principles, because Alabama courts have subsumed the former within the latter.

officer is not entitled to state-agent immunity where the plaintiff's version of the facts shows that the officer fabricated charges against the plaintiff, lacked probable cause and harbored a malicious intent. *See Grider*, 618 F.3d at 1258.

The well-pleaded factual allegations of the Complaint are likewise sufficient to strip the Fairhope Defendants of state-agent immunity. In particular, Windham's factual allegations show that the officers falsified allegations of wrongdoing by Windham, intentionally provoked her by issuing unreasonable, counterfactual and unconstitutional commands to her, and arrested her on trumped-up charges for which they knew they lacked even arguable probable cause. These and other facts set forth in the Complaint are sufficient to show the kind of conduct that is willful, malicious, and exceeding the officers' lawful authority, thereby precluding application of *Cranman* in the officers' favor at the Rule 12(b)(6) stage.

### 2.    *Particular State-Law Claims.*

With regard to specific state-law claims, the Fairhope Defendants advance a series of abbreviated, often perfunctory arguments that largely duplicate arguments made elsewhere with respect to other claims and defenses. These contentions will be considered sequentially. In so doing, the Court declines to elaborate on, embellish or develop those theories for relief, but instead takes them in the manner and form presented by movants.

Count XII is a state-law claim for false imprisonment / false arrest. Movants insist they are entitled to state-agent immunity on this claim because Windham "fails to allege any facts which state a plausible claim that the officers acted fraudulently, in bad faith, with malice or willfulness." (Doc. 8, at 25.) The Court has already found with respect to the federal false imprisonment / false arrest claim (Count I) that the facts alleged in the Complaint show that the officers lacked arguable probable cause to arrest Windham. As shown by the *Ruffino* and *Mann* line of authority discussed *supra*, the absence of arguable probable cause likewise establishes the requisite willfulness, bad faith and/or malice, so as to eliminate the availability of state-agent immunity in these circumstances. The Motion to Dismiss is **denied** as to Count XII.

Counts XIII and XIV are state-law claims for excessive force and assault and battery. Once again, the Fairhope Defendants' Motion to Dismiss goes no further than to make a conclusory statement that movants are entitled to state-agent immunity because "[t]he plaintiff fails to allege any facts which support her bald assertion that the officers acted fraudulently, in bad faith, with malice or willfulness." (Doc. 8, at 27.) The Fairhope Defendants do not develop

this contention, leaving the Court to guess why they maintain the specific, detailed allegations of wrongdoing and nefarious purpose set forth in the Complaint are not sufficient to overcome state-agent immunity.  In any event, as noted *supra* with regard to Count II, the facts in the Complaint taken in the light most favorable to Windham support an inference that Officers Scott and Rehorn used excessive and unreasonable force by repeatedly throwing Windham to the ground, dragging her from the vehicle, and inflicting significant physical injuries on her.[21]  Such egregious use of force would establish the requisite willfulness and bad faith under Alabama law, as recognized in the *Mann* case cited *supra*.  And of course, the factual allegations of excessive force that undergird Count XIII would likewise give rise to a viable assault and battery claim in Count XIV pursuant to Alabama law.  *See Ruffino*, 891 F. Supp.2d at 1279 ("Under Alabama law, excessive force during an arrest constitutes assault and battery.").  The Motion to Dismiss is **denied** as to Counts XIII and XIV.

Count XV is a state-law claim for malicious prosecution relating to the involuntary commitment proceeding initiated against Windham by Officer Scott.  The sum total of Officer Scott's argument for dismissal of this claim is the bare assertion that "[a]lthough the plaintiff alleges in her complaint that Officer Scott acted willfully and with malice, she pleads no facts which support this formulaic recitation of the elements of this cause of action."  (Doc. 8, at 28.) A fair reading of the Complaint (both within Count XV and elsewhere) shows that plaintiff has alleged numerous facts supporting an inference of willfulness and malice on Officer Scott's part, including facts that he knew the legal prerequisites for involuntary commitment were not present, he engaged in harassment and unconstitutional conduct towards Windham, and his pursuit of commitment proceedings against her was part and parcel of that patently illegal, malicious

---

[21]     The mere fact that Windham resisted an arrest lacking in arguable probable cause did not authorize the officers to use whatever force they wished to subdue her.  In fact, courts applying Alabama law continue to recognize today that "while an officer has the power to use a reasonable amount of force in making a lawful arrest or investigatory stop, an Alabamian has the reciprocal right to use force in resisting an unlawful arrest." *Exford*, 887 F. Supp.2d at 1224 n.7 (citations omitted); *Telfare v. City of Huntsville*, 841 So.2d 1222, 1229 (Ala. 2002) ("The law in Alabama is clear that, to a limited degree, a party is justified in attempting to resist an unlawful arrest.  A party may use reasonable force to extricate himself from an unlawful arrest.") (internal citations omitted).  So, especially in regard to the state-law excessive force claim, defendants cannot use Windham's admission that she resisted in some unspecified way as *carte blanche* to utilize disproportionate, extreme and excessive force to consummate the seizure of her person.

behavior.  The Complaint, taken as a whole, contains far more than a "formulaic recitation of the elements" of malicious prosecution.  On this threadbare showing by movants, the Motion to Dismiss is **denied** with respect to Count XV.

The analysis becomes more interesting as to Count XVI, a claim of defamation leveled against Chief Press and the City for making public certain information concerning Windham's January 12, 2012 arrest.  The Complaint alleges that Chief Press's narrative was "detailed, yet incomplete," and that it "suggested that plaintiff, without cause, deliberately defecated in a police vehicle which was untrue."  (Doc. 1, ¶¶ 214, 216.)  Defendants contend that dismissal of Count XVI is proper because the Complaint does not allege that Chief Press's release contained untruths.  Under Alabama law, "[t]ruth is a complete and absolute defense to defamation. … Truthful statements cannot, as a matter of law, have a defamatory meaning."  *Ex parte Bole*, 103 So.3d 40, 51 (Ala. 2012) (citations omitted); *see also Wal-Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 840 (Ala. 2003) (similar).  In Alabama, "[t]he first element of a cause of action in defamation is a false statement."  *Tidwell v. Winn-Dixie, Inc.*, 502 So.2d 747, 748 (Ala. 1987).

Again, Count XVI identifies the falsity as being an imputation in Chief Press's statement that Windham, "without cause, deliberately defecated in a police vehicle."  (Doc. 1, ¶ 216.)  Neither side addresses whether a literally true statement with a false implication may support a defamation claim under Alabama law.  Review of applicable authority yields an affirmative result.  *See, e.g., Finebaum v. Coulter*, 854 So.2d 1120, 1128 (Ala. 2003) (if "a communication is reasonably capable of a defamatory meaning," then "it is then for the jury to say whether the statement was in fact so understood," with the applicable test "in determining the defamatory nature of an imputation [being] that meaning which would be ascribed to the language by a … common mind") (citations and internal marks omitted).  "Any statement from which a reasonable person might infer a false factual connotation which would harm the victim's reputation in the eyes of the community, is capable of a defamatory meaning."  *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1438, 1457 (M.D. Ala. 1996) (citation and internal quotation marks omitted).  A fair reading of Count XVI is that Chief Press's publication about the January 12 events could reasonably be inferred as imputing a defamatory falsehood, to-wit: that Windham deliberately defecated in the police car (as opposed to accidentally doing so because of a medical condition exacerbated by defendants' "roughhouse tactics" in arresting her and because of defendants' callous refusal to allow her to access a toilet when she begged for same).  Therefore,

-24-

the falsity requirement has been adequately pleaded to survive Rule 12(b)(6) review, and the Motion to Dismiss is **denied** as to Count XVI.[22]

Finally, Counts XIX, XXI and XXII assert state-law invasion of privacy claims arising from Chief Press's narrative, Officer Scott and Rehorn's partial disrobing of Windham during her arrest, and Officer Rehorn's patdown search.[23]  These defendants' sole articulated basis for seeking dismissal of these claims is that "the plaintiff had no expectation of privacy for actions take [*sic*] during her arrest," and that "the lowering of her pants during her struggle … [did not] constitute an unlawful intrusion into her privacy."  (Doc. 8, at 29-30.)  This superficial assertion lacks persuasive heft.  Fundamentally, defendants do not explain why it is proper (or even permissible) to engraft Fourth Amendment "expectation of privacy" principles onto the Alabama state-law invasion of privacy context.  The Alabama common-law cause of action is analytically and conceptually distinct from, and does not appear rooted in, the Fourth Amendment.  *See, e.g., Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003) ("It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.") (citations omitted).  Defendants neither explain nor provide authority for their premise that

---

[22]      In addition to arguing truth, the Fairhope Defendants maintain that they are entitled to dismissal of Count XVI by operation of Alabama Code § 13A-11-161.  That statute confers a conditional privilege on publication of reports concerning arrests, stating in relevant part as follows:  "The publication of a *fair and impartial* report of … the arrest of any person for any cause … shall be privileged … unless it be proved that … the defendant has refused or neglected to publish … *a reasonable explanation or contradiction thereof by the plaintiff*."  Ala. Code § 13A-11-161 (emphasis added).  At the Rule 12(b)(6) stage, application of § 13A-11-161 does not defeat Count XVI as a matter of law because the Complaint supports a reasonable inference that (i) Chief Press's report was not fair and impartial, but was slanted to impute falsely an embarrassing deliberate act to Windham; and (ii) Chief Press omitted Windham's reasonable explanation / contradiction that she defecated in the police car not intentionally, but inadvertently because of an aggravated medical condition and the officers' refusal to accommodate same when she pleaded with them to allow her to use a restroom.

[23]      As with the federal invasion of privacy claim pertaining to the patdown (Count VI), the Fairhope Defendants make no arguments specific to the state-law invasion of privacy claim relating to the patdown (Count XXII).

a Fourth Amendment expectation of privacy is a prerequisite to a plaintiff's ability to maintain an Alabama invasion of privacy claim.  Alabama authority appears to be to the contrary.[24]  On this threadbare showing, the Motion to Dismiss is **denied** as to the invasion of privacy counts set forth in Counts XIX, XXI and XXII.

### 3.   *Municipal Liability under State Law.*

Finally, the parties spar as to whether municipal liability lies against the City of Fairhope under state law, as alleged in Count XI of the Complaint.  The parties devote approximately one paragraph each to this claim, so the legal presentation on both sides is minimal.  Nonetheless, the Court perceives the City to be making three arguments.

First, the City professes entitlement to state-agent immunity.  It is beyond cavil, however, that a City cannot obtain state-agent immunity where the underlying officers have been denied it. *See, e.g., Downing v. City of Dothan*, 59 So.3d 16, 18 n.2 (Ala. 2010) ("because the liability of the City of Dothan in this case is contingent on the liability of its police officers, we will consider whether the police officers, as agents of the City, would be entitled to immunity under the analysis stated in *Cranman*"); *Borders v. City of Huntsville*, 875 So.2d 1168, 1183 (Ala. 2003) ("if Earle is not entitled to immunity pursuant to § 6-5-338(a), the plain language of the statute withholds immunity from the City").  The Court having already found that the individual officers are not entitled to state-agent immunity at the Motion to Dismiss stage, the same conclusion attaches to the City of Fairhope.

---

[24]   *See, e.g., S.B. v. Saint James School*, 959 So.2d 72, 98 (Ala. 2006) (tort is established where "the defendant gave publicity to a matter (1) that would be highly offensive to a reasonable person, and (2) that is not a matter of a legitimate public concern"); *Johnson v. Stewart*, 854 So.2d 544, 549 n.1 (Ala. 2002) ("Even in a public place, … there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.") (citation omitted); *Martin v. Patterson*, 975 So.2d 984, 994 (Ala.Civ.App. 2007) ("a wrongful intrusion may occur in a public place, so long as the thing into which there is intrusion or prying is entitled to be private").  These and other Alabama cases would appear to support state-law invasion of privacy claims for events occurring in public places that involve intrusions into private matters (*i.e.*, publication of details about an arrestee's involuntary bowel movement, momentary exposure of an arrestee's genital area, an invasive patdown).  Defendants have presented neither law nor argument that Alabama would not recognize such claims under the factual scenario alleged in the Complaint, and this Court will cannot develop a Rule 12(b)(6) movant's position for it.

Second, the City insists that it is entitled to immunity under Alabama Code § 11-47-190 in any event, because "[t]he City is not liable for acts of its agents undertaken with a higher degree of fault than neglect, carelessness, or unskillfulness." (Doc. 8, at 30.) But Alabama courts have not interpreted § 11-47-190 as creating blanket immunity for a municipality for claims sounding in false arrest, excessive force, assault and battery and so on. In *Borders v. City of Huntsville*, 875 So.2d 1168 (Ala. 2003), the Alabama Supreme Court reversed the lower court's dismissal of claims of excessive force, false arrest, false imprisonment, and assault and battery under § 11-47-190 because all such claims "are based upon Earle's alleged neglect, carelessness, and unskillfulness." *Id.* at 1183; *see also Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995) ("where a plaintiff alleges a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness' the plaintiff has stated a cause of action under Ala.Code 1975, § 11-47-190"). Under these circumstances, the wholesale dismissal of the Complaint on § 11-47-190 grounds is unwarranted because, at a minimum, Windham has alleged a factual pattern demonstrating neglect, carelessness, and/or unskillfulness by Officers Scott and Rehorn.[25]

Third, the City argues that Windham's claims against it for punitive damages are not actionable as a matter of Alabama and federal law. Considerable authority supports this position. *See, e.g.,* Ala. Code § 6-11-26 ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof …."); *City of Tarrant v. Jefferson*, 682 So.2d 29, 30 (Ala. 1996) ("federal law prohibits a § 1983 award of punitive damages against a municipality"); *Henderson v. City of Fairfield, Ala.*, 2013 WL 550158, *12 (N.D. Ala. Feb. 13, 2013) ("even if Henderson had a viable claim against the City, he would not be entitled to punitive damages from it"). Plaintiff offers no response to this compelling, legally supported argument. Accordingly, the Motion to Dismiss will be **granted** as to all of Windham's claims against the City of Fairhope for punitive damages.[26]

---

[25]      The Fairhope Defendants elected not to direct their § 11-47-190 argument at particular claims or causes of action, but instead to aim it at the Complaint as a whole. The Court declines *sua sponte* to tease out potential (and unstated) arguments about how that statute may apply to particular claims or causes of action herein, but instead considers movants' position in the all-or-nothing manner in which it was presented.

[26]      There is some ambiguity in the Complaint as to whether Windham seeks punitive damages against the City. Counts X and XI (which specifically concern municipal liability) do not mention punitive damages; however, other claims in which the City is listed as a named (Continued)

### III.    The Kostyra Defendants' Motion to Dismiss.

Defendants Frank and Anita Kostyra have brought a Rule 12(b)(6) Motion of their own, directed at Windham's claims against them in the Complaint. That Motion has likewise been briefed (although the Kostyras elected not to file a reply brief), and will now be considered on a claim-by-claim basis.

#### A.    *Federal Conspiracy Claim (Count IX).*

As previously noted, Count IX of the Complaint alleges that the Kostyras and Officer Scott violated 42 U.S.C. § 1985(3) by conspiring to deprive Windham of her due process rights to be free from arrest and prosecution without probable cause, all because of her perceived mental disability. The Kostyra Defendants move to dismiss Count IX on the ground that the Complaint "is devoid of any proof or allegation of a substantiated agreement between the Kostyras and other(s)." (Doc. 12-1, at 4.) It is axiomatic, of course, that a § 1985 conspiracy claim requires proof of an agreement. *See, e.g., Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1149 (11th Cir. 2009) (reciting elements); *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("In order to establish a § 1985(3) conspiracy claim, Dickerson must show an agreement between 'two or more persons' to deprive him of his civil rights."). Thus, at the pleading stage, a plaintiff asserting a § 1985(3) claim must set forth "supporting facts that tend to show an unlawful agreement." *Suber v. Guinta*, --- F. Supp.2d ----, 2012 WL 4510708, *11 (E.D. Pa. Sept. 28, 2012) (citation omitted). In other words, a plaintiff "must provide some factual basis … that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Robinson v. County of Yates*, 821 F. Supp.2d 564, 568 (W.D.N.Y. 2011) (citations omitted); *see also Boyle v. Barnstable Police Dep't*, 818 F. Supp.2d 284, 318 (D. Mass. 2011) ("a claim of conspiracy must allege facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an unlawful agreement").

Contrary to the Kostyra Defendants' Motion to Dismiss, the Complaint does not couch the conspiracy allegations in generic and conclusory labels. Rather, Windham's pleading

---

defendant do claim punitive damages, without distinguishing between the relief sought from the City and that sought from the other defendants. This Order resolves that ambiguity by holding once and for all that Windham cannot pursue claims for (and cannot receive an award of) punitive damages against the City of Fairhope in this litigation.

alleges, among other facts, that (i) the Kostyras have had an axe to grind against Windham for many years, manifested in an expansive campaign of criminal complaints against her, of which history Officer Scott was well aware (doc. 1, ¶¶ 16, 17); (ii) in or around late 2011, Kostyra reached an understanding with Fairhope police that they would arrest Windham if she went into the street and blocked traffic (*id.*, ¶ 20); (iii) shortly before January 12, 2012, Kostyra went to the Fairhope police to "warn them" that Windham "would snap" and that the Kostyras "would be a target of her fury" (*id.*, ¶ 64); (iv) Kostyra lied to the Fairhope police on January 12 by reporting that Windham was in the street blocking traffic, which she was not, because he knew from his arrangement with Fairhope police that such a report would result in Windham's arrest (*id.*, ¶ 24); (v) Officer Scott arrested Windham on January 12 at Kostyra's bidding even though Officer Scott never observed her to be blocking traffic and had no reason to believe that she actually had been blocking traffic (*id.*, ¶ 29); and (vi) Officer Scott immediately commenced commitment proceedings against Windham, as Kostyra had done before. These and other facts are sufficiently detailed at the pleadings stage to raise an inference of a conspiracy (*i.e.*, an express or tacit agreement) between the named defendants and thereby overcome the low bar of Rule 12(b)(6) review. The Kostyras are not entitled to dismissal of Count IX.

###### B.     State-law False Imprisonment / False Arrest (Count XII).

It is undisputed that Frank Kostyra (who is not a law enforcement officer) did not arrest or detain Windham on January 12, 2012. Nonetheless, plaintiff has named Kostyra as a defendant in Count XII (false imprisonment / false arrest under Alabama law) for the stated reason that he "set plaintiff's false arrest and false imprisonment [in motion] by initiating a police report falsely claiming that plaintiff was blocking traffic." (Doc. 1, ¶ 168.) Kostyra now moves to dismiss Count XII, reasoning that the mere act of making a police report does not expose him to liability for a subsequent improper arrest / detention.

As a general proposition, it is true that "someone who simply reports a potential crime to the police will not face liability for false imprisonment" because such conduct is not viewed "as an instigation or participation in the detention or arrest." *Yabba v. Alabama Christian Academy*, 823 F. Supp.2d 1247, 1251 (M.D. Ala. 2011) (citation omitted). There is, however, an important caveat. Alabama law provides that "[a] person who reports a suspicion that another person may be guilty of a crime cannot be liable for false imprisonment ***unless that person has acted in bad faith, without reasonable cause to believe that the accused is guilty of the crime***." *Myles v.*

*Screentech, Inc.*, 98 So.3d 563, 569 (Ala.Civ.App. 2012) (emphasis added, and citations and internal quotation marks omitted); *see also Crown Cent. Petroleum Corp. v. Williams*, 679 So.2d 651, 655 (Ala. 1996) ("a person does not instigate an arrest by merely providing information that results in another's arrest, unless the person acts in bad faith (*i.e.*, lacks any reasonable basis upon which to accuse another of a crime)").  The exception looms large here, because the Complaint is rife with specific facts demonstrating bad faith on Kostyra's part.  Taking the factual allegations of the Complaint as true, Frank Kostyra's police report was 100% fabrication, presented for the sole purpose of harassing Windham in furtherance of a longstanding neighborhood feud.  Because the Complaint adequately alleges that Kostyra lacked any reasonable basis upon which to accuse Windham of a crime when he called the police on January 12, 2012, Count XII states a cognizable claim against him for false imprisonment under Alabama law.  The Kostyras' Motion to Dismiss is properly **denied** on this claim.

### C.     *State-law Excessive Force / Assault and Battery (Counts XIII, XIV).*

Plaintiff has also named Frank Kostyra as a defendant in her state-law claims for excessive force (Count XIII) and assault and battery (Count XIV).  The Complaint does not allege that Kostyra ever touched Windham on January 12, 2012; rather, it attempts to bootstrap Kostyra's liability on the same "instigation" theory that props up Count XII, discussed *supra*. (Doc. 1, ¶¶ 186, 199.)  But Alabama courts do not appear to recognize an instigation theory of liability against a person making a police report when the police subsequently use unnecessary and unreasonable force to secure a suspect.  Rather, the Alabama torts of excessive force and assault and battery both require proof that the defendant used the force or did the touching.  *See, e.g., Walker v. City of Huntsville*, 62 So.3d 474, 494 (Ala. 2010) ("The plaintiff in an action alleging assault and battery must prove (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.") (citations omitted).[27]  With no allegations that Kostyra touched Windham or participated in the physical altercation, the Kostyra Defendants argue, Counts XIII and XIV must be dismissed as to Frank Kostyra.

---

[27]       *See also Franklin*, 670 So.2d at 852 (state-law excessive force claim "is the equivalent of asserting an assault and battery not measured or patterned for the circumstances, or an unskilled response"); *Ruffino*, 891 F. Supp.2d at 1279 ("Under Alabama law, excessive force during an arrest constitutes assault and battery.").

In response, plaintiff admits that "Frank Kostyra should have been excluded under" Count XIII. (Doc. 16, at 11.)  The Motion to Dismiss is therefore **granted** as to Count XIII, insofar as it relates to defendant Kostyra.  As for Count XIV, plaintiff states that she is "abandoning" the battery portion of the claim against Frank Kostyra.  (*Id.*)  Nonetheless, she professes to intend to proceed in Count XIV on an assault theory against Kostyra based on allegations that he pointed a rifle at her in April 2008.  (*Id.* at 11-12.)  This argument fails. Nothing in the text of Count XIV would reasonably place defendants on notice that the assault and battery claim related to events occurring on any date other than January 12, 2012.  Count XIV is grounded in events taking place in January 2012, not April 2008.  It does not mention a rifle or accuse Kostyra of assault because he pointed a rifle at Windham four years before the events referenced in that Count.  Indeed, the sole well-pleaded factual allegation about Kostyra in Count XIV is that he "fil[ed] a false police report" on January 12, 2012.  (Doc. 1, ¶ 186).  The Motion to Dismiss must be evaluated by reference to claims actually alleged in the pleading, not claims that plaintiff meant to allege or forgot to allege or now thinks she wants to allege.  The Motion to Dismiss is **granted** as to Count XIV in its entirety, with respect to defendant Frank Kostyra.

> ### D.     *State-law Malicious Prosecution (Count XVI).*

Count XVI of the Complaint is a state-law claim for malicious prosecution against Anita Kostyra relating to a criminal harassment complaint that she brought against Windham in October 2010.  (Doc. 1, ¶¶ 16(n), 206, 208.)[28]  Under Alabama law, the elements of a malicious prosecution claim are "(1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding."  *Hunter v. Mooring Tax Asset Group, LLC,* 53 So.3d 879, 883 (Ala. 2009) (citation omitted).

In moving to dismiss Count XVI, Ms. Kostyra focuses on the second element by arguing that the Complaint "does not provide how said prosecution was without basis" and "asserts mere

---

[28]     One sentence in Count XVI references a date of "October 2012" for this harassment complaint.  (Doc. 1, ¶ 206.)  By all appearances, the "2012" date is a typographical error, and both sides appear to be in agreement that the incident in question was a complaint lodged by Ms. Kostyra in October 2010, not 2012.

conclusory allegations of malice." (Doc. 12-1, at 8.)[29]  A reasonable reading of the Complaint shows, however, that Count XVI adequately pleads a claim of malicious prosecution.  Windham alleges that Anita Kostyra has harbored bitterness against her dating back to an October 2006 insurance dispute (doc. 1, ¶ 210), that the October 2010 harassment complaint marked the 13th time in a four-year span that Ms. Kostyra or her husband had filed a criminal complaint or initiated commitment proceedings against Windham (*id.*, ¶ 16), that all 12 of the Kostyras' earlier complaints against Windham had been dismissed or decided in Windham's favor or otherwise abandoned (*id.*), and that the October 2010 criminal complaint was likewise decided in Windham's favor (*id.*).  Given this frankly extraordinary history of acrimony and pattern of unsuccessful legal attacks launched by the Kostyras as chronicled in the Complaint, reasonable inferences are created that Ms. Kostyra bore a long-running grudge against Windham, that the October 2010 complaint was one in an ongoing series of false and/or otherwise baseless attempts by the Kostyras to have Windham imprisoned or committed, and that the October 2010 complaint itself was lacking in probable cause and brought with malice.  Certainly, the Complaint is sufficiently detailed to nudge this claim from the conceivable to the plausible, as required by the *Twombly* / *Iqbal* line of authorities.  Accordingly, the Motion to Dismiss will be **denied** as to Count XVI.

> **E.    *Defamation (Count XVIII).***

Next, Count XVIII of the Complaint is a defamation claim brought against defendant Frank Kostyra relating to the January 12, 2012 e-mail message he transmitted about Windham's arrest.  That message included statements that, earlier that morning, Windham "started destroying her front yard like a mad person;" that she "stopped traffic, & defamed us to the stopped travelers, yelling & screaming & pointing our way;" and the police arrested her "on the

---

[29]    Movants also complain that "the alleged malicious prosecution is irrelevant to the current matter before the Court and does not arise out of the same set of facts, transaction or occurrence." (Doc. 12-1, at 9.)  However, they do not explain, and this Court does not perceive, how such an objection might justify dismissal of Count XVI under Rule 12(b)(6).  Rather than arguing failure to state a claim, the Kostyra Defendants are alluding to a joinder objection, which does not belong in a Rule 12(b)(6) motion.  What's more, the joinder argument appears unfounded, given the Federal Rules of Civil Procedure's provision that "[a] party asserting a claim … may join, as independent or alternative claims, as many claims as it has against an opposing party."  Rule 18(a), Fed.R.Civ.P.  For Motion to Dismiss purposes, this relevancy objection is **overruled**.

ground in handcuffs, in front of a vehicle she stopped." (Doc. 1, ¶ 64.) The well-pleaded allegations of the Complaint reflect that Kostyra's account of these events was false in several respects. For example, plaintiff's version of the facts is that (i) she was not "destroying her front yard like a mad person" but was simply "tending to her yard gathering debris" (*id.*, ¶ 21); and (ii) she did not stop or block traffic, but merely provided aid to a stranded motorist.

Kostyra contends that Count XVIII should be dismissed because the January 12 e-mail contained statements of opinion, which Kostyra says are not actionable in defamation under Alabama law pursuant to *Sanders v. Smitherman*, 776 So.2d 68, 74 (Ala. 2000) ("One cannot recover in a defamation action because of another's expression of an opinion based upon disclosed, nondefamatory facts, no matter how derogatory the expression may be."). This argument misses the point. A reasonable reading of the Complaint and Count XVIII is that Windham is proceeding against Kostyra for making false statements of fact (not opinion) in the January 12 e-mail that she was destroying her front yard, acting "like a mad person," stopping traffic, screaming and yelling and so on. Although Kostyra also suggests these purportedly false statements were not defamatory, the bizarre behavior recounted in Kostyra's e-mail (which, again, Windham says never happened) would obviously "tend[] so to harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *Dudley v. Bass Anglers Sportsman Soc.*, 777 So.2d 135, 140 (Ala.Civ.App. 2000) (citations omitted).

In short, the Court readily finds that Count XVIII states a cognizable claim of defamation against Kostyra under Alabama law, and **denies** the Motion to Dismiss with respect to that claim.

### F.      *Invasion of Privacy (Count XX).*

Count XX of the Complaint alleges that Kostyra's January 12 e-mail constituted an invasion of privacy because it "was designed to place her in a false light and did place her in a false light." (Doc. 1, ¶ 237.) Kostyra argues that this claim should be dismissed because the underlying events occurred in public view. (Doc. 12-1, at 11.) Applicable law is clear that "[a] false-light claim does not require that the information made public be private; instead, the information made public must be *false*." *Ex parte Bole*, 103 So.3d 40, 52 (Ala. 2012) (citations omitted). As discussed with regard to Count XVIII, *supra*, the Complaint adequately pleads falsity. Defendant also suggests (although he uses different terminology) that Count XX flunks the requirement that "the false light in which the other was placed would be highly offensive to a

reasonable person." *Bole*, 103 So.3d at 51 (citations omitted).  False accusations that Windham was conducting herself in an uncontrolled, erratic manner suggesting mental instability could reasonably be viewed as highly offensive; therefore, this element is satisfied.  Movant's remaining arguments for dismissal fail to appreciate and allow for the legal framework applicable to "false-light" claims of invasion of privacy under Alabama law, and therefore are not meritorious.  The Motion to Dismiss is **denied** as to Count XX.

> ### G.      *Motion for More Definite Statement.*

Finally, the Kostyra Defendants move for a more definite statement, seeking an order requiring the plaintiff to supplement her 59-page, 246-paragraph Complaint with additional allegations identifying the "specific amount or type of relief sought from the Kostyras." (Doc. 12-1, at 12.)[30]  The Federal Rules of Civil Procedure do not demand such precision.  *See* Rule 8(a)(3), Fed.R.Civ.P.  Moreover, a plain reading of the Complaint is sufficient to place the Kostyra Defendants on notice that Windham is seeking to recover from them compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs.  (*See* doc. 1, at 58-59.)  To the extent that the Kostyra Defendants desire greater elaboration or specificity from Windham as to the relief she seeks from them, they will have ample opportunity to explore that topic via ordinary discovery processes.  *See, e.g., Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp.2d 1218, 1221-22 (S.D. Ala. 2005) (Rule 12(e) motions "are viewed with disfavor and are rarely granted," and are "not a substitute for discovery").  Accordingly, the Kostyra Defendants' Motion for More Definite Statement under Rule 12(e), Fed.R.Civ.P., is **denied**.

## IV.   Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.      Plaintiff's Motion to Exceed Page Limitation (doc. 14) is **granted**, and her brief (doc. 15) is accepted in its current form.

---

[30]      The Kostyra Defendants purport to be requesting a more definite statement pursuant to Rule 54(e) of Alabama Rules of Civil Procedure.  This case is pending in federal court, not state court.  It is governed by the Federal Rules of Civil Procedure, not their state analogue.  Accordingly, the Court construes the Motion for More Definite Statement as having been brought pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, regardless of how movants label it.

2.      The Fairhope Defendants' Motion to Dismiss (doc. 7) is **granted in part**, and **denied in part**.  The Motion is **granted** as to Count IV (invasion of privacy as to Chief Press) and Count V (invasion of privacy as to Officers Scott and Rehorn), and those causes of action are **dismissed**.  Plaintiff's claims for punitive damages against the City of Fairhope are likewise **dismissed**.  In all other respects, the Motion is **denied**.

3.      The Kostyra Defendants' Amended Motion to Dismiss or in the Alternative, Motion for a More Definite Statement (doc. 12) is **granted in part**, and **denied in part**.  The Motion to Dismiss is **granted** as to Count XIII (excessive force) and Count XIV (assault and battery), and those causes of action are **dismissed** as to the Kostyra Defendants only (not the Fairhope Defendants).  In all other respects, the Motion to Dismiss is **denied**.  The Motion for More Definite Statement is **denied**; and

4.      Pursuant to Rule 12(a)(4)(A), Fed.R.Civ.P., all defendants are **ordered** to file answers to the Complaint on or before **April 30, 2013**.

DONE and ORDERED this 16th day of April, 2013.

                              s/ WILLIAM H. STEELE
                              CHIEF UNITED STATES DISTRICT JUDGE